**NOT FOR PUBLICATION**

**UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY
CAMDEN VICINAGE**

_____

| | |
|---|---|
| I.H., Fed. Reg. No. 62317-050, : | |
| : | Civ. No. 18-10806(RMB) |
| Petitioner : | |
| : | |
| v. : | **OPINION** |
| : | |
| WARDEN OF UNNAMED FEDERAL : | |
| CORRECTIONAL INSTITUTION, : | |
| : | |
| Respondent : | |

_____:

**BUMB**, District Judge

On June 20, 2018, Petitioner I.H.,[1] a prisoner confined in an unnamed Federal Correctional Facility,[2] filed a petition for a writ of habeas corpus under 28 U.S.C. § 2241, challenging his loss of good time credits as a sanction following a prison disciplinary hearing. (Pet., ECF No. 1.) On August 6, 2018, Respondent filed Respondent's Answer to Petition For a Writ of Habeas Corpus. ("Answer", ECF No. 3.) For the reasons discussed below, the Court denies the petition.

---

[1] Petitioner is also referred to in exhibits to the Petition and Answer as "I.H.2."

[2] At the time the petition was filed, Petitioner was a cooperating witness awaiting sentencing and confined in a protective custody unit within this Court's jurisdiction. (Affidavit of Jurisdiction, ECF No. 1-3, ¶3.)

I.  BACKGROUND

Respondents submit that Petitioner is incarcerated in a federal institution within the jurisdiction of this Court. (Answer, ECF No. 3 at 3.) At the time of the incident underlying the discipline he challenges, Petitioner was designated to a different federal institution. (Id.)

On April 19, 2017, Petitioner was charged with "Engaging in Sexual Acts," a violation of Prohibited Act Code 205, in Incident Report No. 2976971. (Declaration of Ondreya Barksdale,[3] ("Barksdale Decl."), Ex. F, ECF No. 3-2 at 14, Part I, ¶¶9, 10.) On April 19, 2017 at 2:15 p.m., staff became aware of the following incident:

> Upon a review of institutional camera system at [REDACTED] Housing Unit, I became aware of inmate I.H.2, #62317-050, masturbating to female staff members working on the evening of Saturday, April 8, 2017. Specifically, on April 8, 2017, at 5:43 pm, I.H.2, approached the microwave stand located outside the Unit Officer's station Upon approaching the microwave station, I.H.2 was moving his hand in an in and out motion on his fully erect penis. He stationed himself behind the microwave stand and continued to masturbate, grasping his erect penis with his left hand and moving it in and out, while staring directly into the Officer's station where the female officer was sitting the entire time. He continued this behavior until 5:49 pm, when he walks away. The review of camera N-15-Commons Area, clearly shows the entire incident. I.H.2

---

[3] Ondreya Barksdale is a paralegal specialist employed by the Federal Bureau of Prisons ("BOP"), Northeast Regional Office ("NERO"), who has access to most records maintained in the ordinary course of business at BOP NERO. (Barksdale Decl., ECF No. 3-1, ¶1.)

2

was escorted to the SHU without further incident.

(Barksdale Decl., Ex. F, ECF No. 3-2, Part I, §§9-10.) Petitioner was provided a copy of the Incident Report on April 20, 2017, at 9:59 a.m. (Id., ¶¶15, 16.) Petitioner was advised of his right to remain silent during the disciplinary process. (Id., Part III, ¶23.) When the Incident Report was investigated, Petitioner stated "[t]his is unbelievable, and I want to see the camera." (Id., ¶24.) Petitioner did not ask to call any witnesses. (Id., ¶25.)

After investigation, the Incident Report was referred to the Unit Disciplinary Committee ("UDC") for an Initial Hearing. (Id., ¶¶ 26-27.) A hearing was held before the UDC on April 26, 2017, and Petitioner declined to make any comments. (Id., Part II, ¶¶7, 11.) The UDC referred the Incident Report to the Discipline Hearing Officer ("DHO") for final disposition and recommended the imposition of "whatever sanctions are available to the DHO." (Id., ¶¶18, 20.)

Petitioner was advised of his rights before the DHO. (Barksdale Decl., Ex. D., ECF No. 3-2 at 8-10.) He asked to have a staff representative and to call witnesses, although he could not identify any witnesses who were present "until verified by staff rep." (Barksdale Decl., Ex. C, ECF No. 3-2 at 6-7.) Petitioner's DHO hearing was held on May 9, 2017. (Barksdale Decl., Ex. A, ECF No. 3-2, Part I.B.) The DHO read Petitioner his rights.

(Barksdale Decl., Ex. A, ECF No. 3-2, Part I.C.) Petitioner then waived his right to a staff representative and did not request any witnesses. (Id., Parts II.A, III.C.1; Barksdale Decl., Ex. B, ECF No. 3-2 at 4-5.) Petitioner declined to make a statement on his own behalf. (Id., Ex. A, ECF No. 3-2, Part III.B.)

The DHO considered the evidence, including the Incident Report and a DVD containing a recorded version of the prohibited act, and found that the greater weight of the evidence supported that Petitioner committed the prohibited act. (Id., Ex. C, ECF No. 3-2, Part III.D, V.) The DHO imposed sanctions including disallowance of 20 days of good conduct time, disciplinary segregation for 30 days (15 days suspended pending clear conduct for 180 days), and one-year loss of visiting privileges. (Barksdale Decl., Ex. A, ECF No. 3-2, Part VI.) Petitioner was provided a copy of the DHO Report on May 16, 2017. (Id., Part IX.) Petitioner properly exhausted his administrative remedies regarding the disciplinary action. (Barksdale Decl., ECF No. 3-1, ¶¶4-5.)

In the petition, Petitioner raises three grounds for relief: (1) the UDC exceeded its authority by determining Petitioner's guilt; (2) the UDC and DHO did not view the video footage to determine guilt; and (3) the DHO convinced Petitioner to waive a staff representative. (Pet., ECF No. 1, ¶13.) Petitioner submitted an affidavit (Affidavit of I.H., ECF No. 1-3 at 1-2) and a

4

Memorandum of Law in Supp. of Title 28 Section 221 Petition. ("Petr's Mem.", ECF No. 1-3 at 3-17.)

II. DISCUSSION

A. <u>Standard of Law</u>

28 U.S.C. § 2241 provides, in relevant part:

> (a) Writs of habeas corpus may be granted by the Supreme Court, any justice thereof, the district courts and any circuit judge within their respective jurisdictions….
> . . .
> (c) The writ of habeas corpus shall not extend to a prisoner unless—
> . . .
> (3) He is in custody in violation of the Constitution or laws or treaties of the United States….

"Federal prisoners serving a term of imprisonment of more than one year have a statutory right to receive credit toward their sentence for good conduct." <u>Denny v. Schultz</u>, 708 F.3d 140, 143-44 (3d Cir. 2013) (citing 18 U.S.C. § 3624(b); 28 C.F.R. § 523.20 (2008)). Based on this statutorily created right, "a prisoner has a constitutionally protected liberty interest in good time credit." <u>Id.</u> (quoting <u>Young v. Kann</u>, 926 F.2d 1396, 1399 (3d Cir. 1991) (citing <u>Wolff v. McDonnell</u>, 418 U.S. 539, 556–57 (1974)).

The Supreme Court defined the due process protections required where a prison disciplinary hearing may result in loss of good conduct time. The five due process protections in a prison disciplinary proceeding include: 1) the right to appear before an impartial decision-making body; 2) twenty-four hour advance

written notice of the charges; 3) an opportunity to call witnesses and present documentary evidence, provided the presentation of such does not threaten institutional safety or correctional goals; 4) assistance from an inmate representative, if the charged inmate is illiterate or complex issues are involved; and 5) a written decision by the fact-finder including the evidence relied on and the reason for the disciplinary action. Wolff, 418 U.S. at 546-71. Further, the DHO's decision must be supported by "some evidence." Superintendent, Massachusetts Correctional Inst. at Walpole v. Hill, 472 U.S. 445, 455 (1985).

   B.   BOP Regulations

   The BOP's inmate disciplinary procedures appear in 28 C.F.R. § 541, *et seq.* and Program Statement 5270.09, Inmate Discipline.[4] Staff members shall prepare an Incident Report when they reasonably believe an inmate has committed a violation of BOP regulations. 28 C.F.R. § 541.5. The incident is then referred to a UDC for an initial hearing. 28 C.F.R. § 541.7. If the alleged violation involves a prohibited act listed in the greatest severity category, the UDC must refer the matter to a DHO for a hearing. 28 C.F.R. § 541.7(a)(4). The UDC provides the inmate a written copy of its decision following its review of the Incident Report. 28 C.F.R. § 541.7(h).

---

[4] BOP Program Statements are available at www.bop.gov.

An inmate's rights concerning a DHO hearing are set forth at 28 C.F.R. § 541.8:

> The Discipline Hearing Officer (DHO) will only conduct a hearing on the incident report if referred by the UDC.
> ...
>> (b) Discipline Hearing Officer. The DHO will be an impartial decision maker who was not a victim, witness, investigator, or otherwise significantly involved in the incident.
>>
>> (c) Timing. You will receive written notice of the charge(s) against you at least 24 hours before the DHO's hearing. You may waive this requirement, in which case the DHO's hearing can be conducted sooner.
>>
>> (d) Staff Representative. You are entitled to have a staff representative during the DHO hearing process as follows:
>>
>>> (1) How to get a staff representative. You may request the staff representative of your choice, so long as that person was not a victim, witness, investigator, or otherwise significantly involved in the incident. If your request(s) cannot be fulfilled, and you still want a staff representative, the Warden will appoint one. The Warden will also appoint a staff representative if it appears you are unable to adequately represent yourself before the DHO, for example, if you are illiterate or have difficulty understanding the charges against you.
>>>
>>> (2) How the staff representative will help you. Prior to the DHO's hearing, the staff representative will be available to help you understand the incident report charges and potential consequences. The staff representative may also assist you by speaking with and scheduling witnesses, obtaining written statements,

and otherwise helping you prepare evidence for presentation at the DHO's hearing. During the DHO's hearing, you are entitled to have the staff representative appear and assist you in understanding the proceedings. The staff representative can also assist you in presenting evidence during the DHO's hearing.

(3) How the staff representative may appear. Your staff representative may appear either in person or electronically (for example, by video or telephone conferencing) at the DHO's discretion. If your staff representative is not available for the scheduled hearing, you may either select another staff representative, request the hearing be postponed for a reasonable amount of time until your staff representative can appear, or proceed without a staff representative.

(e) Inmate appearance. You are permitted to appear before the DHO during the hearing on the incident report . . .

(f) Evidence and witnesses. You are entitled to make a statement and present documentary evidence to the DHO on your own behalf. The DHO will consider all evidence presented during the hearing. The DHO's decision will be based on at least some facts and, if there is conflicting evidence, on the greater weight of the evidence. Witnesses may appear at the DHO's hearing . . .

(g) Sanctions. If you committed a prohibited act(s), the DHO can impose any of the available sanctions listed in Tables 1 and 2.

(h) Written Report. You will receive a written copy of the DHO's decision following the hearing. The DHO is not

> required to prepare a verbatim record of
> the hearing. The DHO's written report will
> document the following:
>
>> (1) Whether you were advised of your
>> rights during the DHO process;
>>
>> (2) The evidence relied on by the DHO;
>>
>> (3) The DHO's decision;
>>
>> (4) The sanction imposed by the DHO;
>> and
>>
>> (5) The reason(s) for the sanction(s)
>> imposed.
>
> (i) Appeals. You may appeal the DHO's
> action(s) through the Administrative Remedy
> Program, 28 CFR part 542, subpart B.

C. <u>Analysis</u>

1. Whether the UDC Exceeded its Authority By Determining Guilt

In Ground One of the Petition, Petitioner asserts the UDC found him guilty of a high severity level prohibited act, in violation of Program Statement 5270.09(b)(2) and 28 C.F.R. § 541.7(a)(4), which require high severity level prohibited acts to be referred to a DHO for determinations of guilt. (Petr's Mem., ECF No. 1-3 at 7-10.) As evidence that the UDC determined his guilt, Petitioner quotes Paragraph 19 of the Incident Report "[w]e the Committee find the inmate guilty as charged based on the video evidence and the body of the incident report." (<u>Id.</u> at 8.)

Respondents asserts that the record shows the UDC was not the finder of guilt, but instead referred the issue to the DHO. (Answer, ECF No. 3 at 4, n.2.)

The UDC made the statement Petitioner attributed to it; however, the UDC also referred the Incident Report to the DHO for a determination of guilt. (Barksdale Decl., Ex. F, Part II.) The UDC did not impose any sanctions and it advised Petitioner of his rights in the DHO hearing. (Id., ¶10.) The DHO held a hearing in accordance with the BOP regulations and found Petitioner guilty without relying on the UDC's finding. (Barksdale Decl., Ex. A, ECF No. 3-2.) Under these circumstances, Petitioner's due process right to a hearing before a DHO was not infringed by the UDC's statement that it found Petitioner guilty. See Muhammad v. Wiley, 330 F. App'x 165, 167, n. 1 (10th Cir. 2009) (task for habeas court in challenge to prison disciplinary hearing is to determine whether minimum due process protections outlined in Wolff were met, not whether specific prison regulations dealing with prison disciplinary procedures were followed); See Millhouse v. Bledsoe, 458 F. App'x 200, 203 (3d Cir. 2012) (per curiam) ("[the petitioner] cannot show that his right to due process was violated by a technical non-compliance with a regulation where any delay did not prejudice him.")

    2. Whether the UDC and DHO Failed to View the Video Footage They Relied on to Determine Guilt

10

Petitioner believes the UDC did not watch the video evidence because the UDC did not make any statements such as "the video evidence revealed," "upon viewing the DVD," or "the video footage is consistent with the description of the incident." (Petr's Mem. ECF No. 1-3 at 11.) Petitioner also asserts the DHO did not view the video footage but instead relied on the statement of the author of the Incident Report who viewed the video footage. (Id. at 11-12.) Petitioner further states that a prison staff member who saw the video footage told him on two occasions that she did not see Petitioner masturbating. (Id. at 12.)

Respondent contends that the DHO had before him the Incident Report and the video capturing the activity for which Petitioner was charged. (Answer, ECF No. 3 at 6-7; Barksdale Decl., Ex. A, ECF No. 3-2 at 1-3, Parts 6-II.D., V.) The DHO considered "all of the evidence" and concluded that the greater weight of the evidence supported the finding that Petitioner committed the charged act of "Engaging in a Sexual Act," a Code 205 violation.[5] (Id.)

Respondent contends that although Petitioner believes the DHO did not watch the video, there is nothing in the record to substantiate his contention. (Answer, ECF No. 3 at 6-7.) Respondent also acknowledges Petitioner's allegation that another BOP

---

[5] Code 205, Engaging in a Sexual Act, is a highest severity level prohibited act. 28 C.F.R. § 541.3 (Table I).

employee watched the video and disagreed with the DHO's conclusions of what it portrayed. (Id. at 7) Respondent argues that even if what Petitioner alleges is true, disagreement about the video's content does not undermine the DHO's conclusion that some evidence supported the disciplinary violation. (Id.)

First, the UDC was only required to refer the Incident Report to the DHO for further review and it complied with that requirement. 28 C.F.R. § 541.7(a)(4); Barksdale Decl., Ex. F, ECF No. 3-2, Part II, ¶¶7-20.) Second, Petitioner has not substantiated his allegation that the DHO did not watch the video footage of the prohibited act.

The DHO stated that he considered all of the evidence, including the DVD recording. This is sufficient to establish that the DHO watched the DVD and considered its contents. See Simpson v. Bledsoe, 378 F. App'x 198, 200 (3d Cir. May 4, 2010) (per curiam) (rejecting Petitioner's unsupported claim that witness did not testify at the hearing where DHO's hearing worksheet referred to the testimony and DHO explained that testimony was accidentally stricken from the initial DHO report.) The DHO's reliance on the Incident Report and the DVD recording of the prohibited act are sufficient to meet the "some evidence" standard required to uphold prison disciplinary sanctions. Hill, 472 U.S. at 457 (some evidence standard was met where "the record [was] not so devoid of evidence

that the findings of the disciplinary board were without support or otherwise arbitrary.")

### 3. Whether Petitioner Was Misled Into Waiving a Staff Representative

Petitioner states that he requested a staff representative for the DHO Hearing, as evidenced by his request on the "Notice of Discipline Hearing Before the (DHO). (Petr's Mem., ECF No. 1-3 at 12, citing Ex. B, ECF No. 1-3.) Petitioner identifies four staff members, including the DHO, whom he alleges told him that a staff representative could not assist him with a defense but only assure that he knew what he was charged with and assure that his rights were not violated. (Id. at 13.) Petitioner asserts that staff interfered with his right to due process and to pursue a viable defense by telling him a staff representative could not assist him with preparing a defense. (Id.)

Respondent submits that Petitioner received every safeguard to which he was constitutionally entitled during the disciplinary proceeding that resulted in the loss of his good conduct time. (Answer, ECF No. 3 at 7-10.) Petitioner waived his right to a staff representative. (Id. at 10.)

"[I]n cases in which an inmate is illiterate, where the issues in a particular case are extremely complex, or when other circumstances warrant it, due process may require that an inmate be permitted assistance of some sort to enable him to prepare his

13

defense." Von Kahl v. Brennan, 855 F. Supp. 1413, 1426 (M.D. Pa. 1994) (citing Wolff, 418 U.S. at 570.) The lack of a staff representative in a prison disciplinary proceeding does not violate due process where the inmate is not illiterate and the issues are not complex. Macia v. Williamson, 219 F. App'x 229, 233 (3d Cir. 2007).

Even assuming BOP staff misinformed Petitioner about the role of a staff representative, a procedural error in a disciplinary hearing does not justify a reversal unless the inmate shows that he was prejudiced as a result of the error. See Obiegbu v. Werlinger, 488 F. App'x 585, 586 (3d Cir. 2012) (per curiam) (citing Wilson v. Ashcroft, 350 F.3d 377, 380–81 (3d Cir. 2003)); Patel v. Zenk, 447 F. App'x 337, 340 (3d Cir. 2011). Petitioner has offered only speculation that a staff representative could have assisted him by pursuing a viable defense. Petitioner has not described any viable defense that he might have pursued with assistance of a staff representative which he could not pursue without such assistance. Petitioner has failed to show prejudice from his lack of a staff representative for the DHO hearing, and he was not denied his right to due process in the DHO hearing.

III. CONCLUSION

For the reasons discussed above, the Court denies the petition for a writ of habeas corpus under 28 U.S.C. § 2241.

An appropriate Order follows.

Dated: March 25, 2019

s/Renée Marie Bumb
**Renée Marie Bumb**
**United States District Judge**
